# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

KELLY PARKER,

        Plaintiff,

v.                            Case No:   2:16-cv-352-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## ORDER

Plaintiff Kelly Parker seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **REVERSED** and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

## I.   Issues on Appeal[1]

Plaintiff raises three[2] issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinion of Plaintiff's consultative examining

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[2] Because the first two issues Plaintiff asserts are interrelated, the Court will discuss them

physician; (2) whether substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity ("RFC") with respect to her need for a hand-held assistive device; and (3) whether substantial evidence supports the ALJ's finding that Plaintiff does not meet a Listing.

## II.   Procedural History and Summary of the ALJ's Decision

Plaintiff filed her applications for DIB and SSI on April 12, 2011.   Tr. 242-56. Plaintiff's applications allege disability beginning on March 9, 2011 due to degenerative disc disease, lumbosacral radiculopathy, chronic pain, arthritis, anxiety and depression.   Tr. 242, 249, 293.   The claims initially were denied on August 4, 2011 and upon reconsideration on November 8, 2011.   Tr. 80-81, 147-51.   Plaintiff requested and received a hearing before ALJ M. Dwight Evans on December 5, 2013, during which she was represented by an attorney.   Tr. 32-68.   As of the date of the hearing, Plaintiff was forty-three years old and had a high school education.   Tr. 18. Plaintiff and Vocational Expert ("VE") William Weikel testified at the hearing.   Tr. 13.   The ALJ issued an unfavorable decision on September 5, 2014.   Tr. 13-23.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.   Tr. 15.   At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since March 9, 2011, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease. . . ."   *Id.*   At step three, the ALJ concluded that Plaintiff

---

together in section IV.A., *infra.*

does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including section 1.00 Musculoskeletal System. A review of the record does not reflect the degree of motor or neurological deficits as required by any listing found under 1.00 Musculoskeletal. Moreover, there is no evidence of documented nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to the degree as required by 1.04.

Tr. 17. Taking into account the effect of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC

to perform a range of light work[3] as defined in 20 CFR 404.1567(h) and 416.967(h). Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 4 hours total in an 8-hour workday; sit 6 hours total in an 8-hour workday; and push and/or pull 20 pounds occasionally and 10 pounds frequently. Additionally, the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; should not be exposed to extreme cold or extreme heat; should not work in close proximity to moving, mechanical parts or high, exposed places; and has no limitation with regard to her exposure to wetness and/or humidity, noise intensity, or vibrations. The claimant would be limited to ordinary atmospheric conditions that are customarily found in an office setting, but cannot work in an environment where there is a concentrated amount of fumes, odors, dusts, and gases. There are no mental limitations established.

---

[3] The regulations define "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Tr. 17. Next, the ALJ found that Plaintiff is capable of performing her past relevant work as a secretary. Tr. 22. Alternatively, after considering the testimony of the VE, the ALJ determined there are other jobs existing in significant numbers in the national economy that Plaintiff is able to perform, such as general office clerk and receptionist, each of which is performed at the sedentary exertional level with a skill level and specific vocational preparation ("SVP") time of 2, considered unskilled work.[4] Tr. 21-22. The ALJ concluded that Plaintiff has not been disabled from March 9, 2011 through the date of the decision. *Id.* On March 17, 2016, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's September 5, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on May 11, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 10-11.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step

---

[4] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00–4p, 2000 WL 1898704 at *3.

sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920.

The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

IV.  **Discussion**

A.  *Whether the ALJ properly evaluated the opinion of Plaintiff's consultative examining physician concerning the medical necessity of an assistive device or whether to include such limitation in Plaintiff's RFC*

Plaintiff contends that the ALJ committed reversible error by failing to assign any weight to the July 18, 2011 consultative examiner's opinion of Lance Cassell, M.D., in which he opined that Plaintiff's hand-held assistive device is medically

required. Doc. 18 at 3, 10-13; Tr. 427. Plaintiff further asserts that because the ALJ did not include this limitation in Plaintiff's RFC assessment and the VE testimony does not support the RFC or that Plaintiff can perform other work, it is legally insufficient. Doc. 18 at 13-15. The Commissioner responds that any error committed by the ALJ is harmless because even with the use of an assistive device substantial evidence supports the ALJ's decision that Plaintiff can perform sedentary jobs in the national economy. Doc. 19 at 6. Because the ALJ failed to assign any weight to the July 18, 2011 opinion of Dr. Cassell and failed to address the issue of the medical necessity of Plaintiff's assistive device in the RFC or hypothetical given to the VE, and the VE's testimony is unclear whether Plaintiff can perform other work in the economy – even sedentary work – the Court is unable to determine if the ALJ's decision was supported by substantial evidence.

i. Dr. Cassell's opinion

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's

impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e)(2); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

In the Eleventh Circuit, the law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 630 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." 630 F.3d at 1179 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational." 630 F.3d at 1179 (citations omitted).

Dr. Cassell examined Plaintiff on July 18, 2011 on referral from the Division of Disability Determination for an internal medicine examination. Tr. 426. Plaintiff's chief complaint was lower back pain, which she stated began six years prior and had been getting progressively worse. *Id.* She rated her pain level 7/10. *Id.* Plaintiff told Dr. Cassell that over the prior three years it had been necessary for her

to walk with a cane, both inside and outside of the house. *Id.* Plaintiff reported to Dr. Cassell that she is unable to cook, clean, do laundry, shop, take care of her child, shower or dress herself without her husband's help. Tr. 427. On examination as to Plaintiff's general appearance, gait and station, Dr. Cassell noted:

> The claimant is a 41-year old female. The claimant is in some mild distress, complaining of lower back pain. Her gait is abnormal, shows a limp utilizing an assistive device, a cane. Claimant refused to walk without her cane. She declines to walk on her heels or toes. She refuses to squat full. Her stance is abnormal, antalgic. She utilizes an assistive device, a cane, because of lower back pain. She always, as per the claimant, [uses the cane] both indoors and outdoors. It was self prescribed. She is unable to walk without severe lower back pain, nor have to hold on anything when the cane is not utilized. *In my opinion, the cane is medically necessary.* She does need help changing for examination. She does need help getting on and off the examination table. She is unable to rise from [a] chair without difficulty.

Tr. 427 (emphasis added). In his neurologic examination of Plaintiff, however, the physician noted that Plaintiff had 5/5 strength in both her upper and lower extremities, and he concluded that her prognosis was stable. Tr. 428-29.

The ALJ's complete discussion in his opinion of Dr. Cassell's examination is as follows:

> Lance Cassell, MD, performed an internal medicine examination of the claimant on July 18, 2011 and had diagnostic impressions of lower back pain and sciatica (Ex. B6F). An x-ray of the lumbar spine showed minimal scoliosis with advanced degenerative change at the L4-5 level and more mild degenerative change at the L5-S1 level. The claimant also refused to walk without her cane, which Dr. Cassell noted was self-prescribed. Though Dr. Cassell found the cane was medically necessary, a physical examination showed 5/5 strength in the upper and lower extremities, 5/5 grip strength bilaterally, intact hand and finger dexterity, no muscle atrophy and no sensory deficits.

Tr. 19. The ALJ discussed the remaining evidence of record, weighed various

opinions of treating and consultative sources, and offered some explanation for the weight afforded to the opinions. Tr. 18-21. The ALJ, however, failed to state with at least some measure of clarity the weight afforded to Dr. Cassell's opinion[5] or to discuss the need for or include an assistive device in the Plaintiff's RFC. Compounding the error, as discussed below, testimony of the VE not only fails to assist the Court in determining whether the ALJ's decision is supported by substantial evidence, but, as pointed out by Plaintiff, actually undermines the Commissioner's argument that the error is harmless. Doc. 22 at 3.

## ii. RFC and medical necessity of an assistive device

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including

---

[5] Nor is the ALJ's failure to explain the weight given to Dr. Cassell's opinion saved by his assigning controlling weight to Plaintiff's treating physician, as he did not do so here. *See* 20 C.F.R. § 404.1527(f)(2)(ii) ("[W]hen an administrative law judge gives controlling weight to a treating source's medical opinion, the administrative law judge is not required to explain in the decision the weight he or she gave to the prior administrative medical findings in the claim."); *Vuxta*, 194 F. App'x at 877 ("Since the ALJ did not give controlling weight to the opinion of a treating physician, it was required to explain the weight given to the opinions of the non-examining state psychologists. . . ."). Here, as in *Vuxta*, the ALJ did not give controlling weight to Plaintiff's examination physician. On the contrary, he gave little weight to the October 29, 2013 opinion of a treating physician from the Department of Veterans Affairs Outpatient Clinic ("VA"), where Plaintiff had been treated over time in 2007 and 2008 and from 2011-2012, who opined that Plaintiff could never stand or walk, lift or sit; use her hands for repetitive grasping, pushing, pulling or fine manipulation; use her feet for repetitive movements in operating foot controls; bend, squat, crawl or climb; or reach above shoulder level. Tr. 20; 704-05. Accordingly, the ALJ was required to explain the weight given to Dr. Cassell's opinion.

any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

The ALJ also is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). The ALJ's RFC assessment must identify and describe the specific medical and nonmedical evidence that supports his conclusion and explain how any material inconsistencies or ambiguities in the record were considered and resolved. SSR 96-8p. Thus, the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Plaintiff argues that the RFC assessment is legally insufficient because the ALJ should have included Plaintiff's need to use a cane or other assistive device in assessing Plaintiff's RFC. Doc. 18 at 13-15. Social Security Ruling 96-9p states that to determine if an assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in

walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 57 Fed. Reg. 34482 (July 2, 1996).

Plaintiff points to Dr. Cassell's examination, in which he not only concluded Plaintiff's use of a cane was medically necessary, she is unable to walk without it, and she uses the cane all the time, both inside and outside, but also that her gait and stance were abnormal, she showed a limp without using her cane, had difficulty getting on and off the examination table and changing for the examination and was unable to rise from a chair without difficulty. Doc. 18 at 14; Tr. 427. Plaintiff also points to EMG testing of Plaintiff's lower extremities, which revealed chronic lumbar radiculopathy at the L-5-S1 level of her spine affecting her right leg and laboratory diagnostic testing documenting spinal stenosis and disc herniations abutting a nerve root. Doc. 18 at 15; Tr. 427, 608, 641. Plaintiff also notes that the record shows her increased use of a cane for ambulation from 2007 through the date of her administrative hearing; by 2010 she was holding her cane with both hands due to bilateral knee stability, and by early 2010 the VA ordered a walker for Plaintiff. Doc. 22 at 3.

Here, although the ALJ acknowledged in the hearing and discussed in his opinion Plaintiff's use of an assistive device in his RFC discussion, he did not discuss his reasoning for not including such a limitation in the RFC, or as noted, the weight he afforded to the opinion of Dr. Cassell that such assistive device was medically necessary. *See e.g.*, Tr. 18 (noting that Plaintiff was prescribed a push walker in

2013); Tr. 19 (discussing Dr. Cassell's opinion that in 2011 a cane was medically necessary; Tr. 20 (discussing a VA medical record in 2012 in which Plaintiff requested a cane). Thus the Court is only left to guess whether he credited Dr. Cassell's opinion at all.

The Commissioner does not contend that the ALJ assigned weight to Dr. Cassell's opinion or that the ALJ considered his opinion concerning the medical necessity of an assistive device in his RFC discussion. Instead, the Commissioner argues, albeit briefly,[6] that remand is not required for further consideration of the medical necessity of Plaintiff's assistive device, because any errors the ALJ committed "in not assigning weight to Dr. Cassell's opinion or including limitations in the RFC finding regarding the medical necessity of Plaintiff's cane . . . . were harmless because use of the cane would not preclude Plaintiff's ability to perform other sedentary jobs in the national economy. Doc. 19 at 6. In support, the Commissioner cites to *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015), and the transcript of the administrative hearing, specifically to the testimony of the VE. Doc. 19 at 6, Tr. 63. While under certain facts and circumstances an individual using a medically required hand-held assistive device, for example one who uses such a device in one hand, can perform sedentary work, SSR 96-9p, 57 Fed. Reg. 34482 (July 2, 1996),[7] the Court is unable to determine whether such facts or

_____

[6] The Commissioner's entire argument on Plaintiff's first two issues is contained on two pages of its 10-page brief. The Commissioner does not address whether it was error for the ALJ to not assign any weight to Dr. Cassell, but only states that any such error would have been harmless. *See* Doc. 19.

[7] "Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds,

circumstances exist in this case. On the contrary, the Court has reviewed the transcript of the administrative hearing, and disagrees first, that the VE's testimony definitively states what the Commissioner asserts it does and second, that it provides "substantial support in support of the ALJ's alternative, step-five finding that Plaintiff could perform other jobs in the national economy." Doc. 19 at 6.

At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Phillips*, 357 F.3d at 1239-40. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002) (per curiam).

Here, the ALJ did not include at all in the hypothetical to the VE Plaintiff's need for an assistive device:

> Dr. [Weikel]. Assume if you would, a hypothetical individual of the same age, education, past work history of Mrs. Parker. She was 40 years old at the time of her alleged onset date in March 9th of 2011, she's currently 43 years of age. In addition to the high school education she has some college courses and other vocational training as a child development --

---

an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers." SSR 96-9p, 57 Fed. Reg. 34482 (July 2, 1996).

in child development accreditation allowing her to do preschool teaching. Now, assume, if you would, her exertional limitations are going to be she has the ability to occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. She can stand and or walk four hours in a[n] eight-hour workday. She can sit for six hours in a[n] eight-hour workday. Her ability for pushing and pulling will be unlimited except up to the extent of her ability for lifting and carrying. Reductions to her exertional abilities, first I'm going to give you the – those limited to occasional, that's up to one third of the workday. Occasional climbing ramps and stairs; occasional balancing; occasional stooping; occasional kneeling, crouching, and crawling. She should never climb ladders, ropes, or scaffolds. She should also not be exposed to extreme cold nor extreme heat. She should not work in close proximity to moving mechanical parts, no work in high exposed places. There's no limitation on her exposure to wet and humid environment -- locations. No limitation on noise intensity, no limitation on vibrations. She would, however, with regard to atmospheric condition[s], be limited to ordinary atmospheric conditions that are customarily found or exist in an office setting, but no location or activity where there is a significant amount – a concentrated amount of fumes, odors, dust, or gases. Are there any jobs that such a hypothetical individual would be able to perform?

Tr. 61-62.   The VE responded that Plaintiff would be unable to perform per past work as a child care teacher or stock worker, but she could perform secretarial jobs.   Tr. 62.   Specifically the VE testified that Plaintiff could perform the jobs of

General office clerk, [Dictionary of Occupational Titles ("DOT")] 209.562-010, it is at the sedentary level, SVP is 2, unskilled, over 9,000 in Florida, over 140,000 nationally. Receptionist, DOT 237.367-038, sedentary, SVP 2, unskilled, 5,800 in Florida, over 88,000 nationally. I think they are the only two sedentary jobs that I feel comfortable in citing because of the atmospheric restrictions you put on it.

*Id.*   When on cross-examination of the VE Plaintiff's counsel raised the issue of Plaintiff's need for an assistive device, the following exchange ensued:

Q:  All right, Dr. [Weikel], if -- using the same hypothetical that the judge just gave you

A:  Mm-hmm.

Q:  -- if the person needed to use both hands for an assistive -- handheld assistive device either a cane or a walker but needed to use both hands to lean on it to hold themselves up and to walk, would that preclude either of the two other jobs that you listed?

A:  It wouldn't preclude them but as you know in a sedentary job you don't sit all day long.

Q:  Okay.

A:  I could see an office worker who had a sedentary office job who in those other two hours of the day when they weren't sitting were carrying things. *Now, [the ALJ] did not put that in his hypothetical, as you know, but that could certainly be problematic if they had to carry paper files, etcetera and had both hands on a walker.*

Tr. 63 (emphasis added).   From that exchange, as argued by Plaintiff, the VE's testimony left open the possibility that Plaintiff's use of an assistive device may have impacted even her performance of sedentary level work.   When, prior to the conclusion of the hearing, Plaintiff's counsel again raised the issue of Dr. Cassell's opinion concerning the medical necessity of Plaintiff's cane, the following discussion took place between Plaintiff's attorney and the ALJ:

ATTY: I was just also going to point out that the consultative examination in [Exhibit] 6F [Tr. 426-29], that doctor does say that her cane is medically necessary. I wanted to point that out.

ALJ: I saw -- she had a cane with her –

ATTY: Mm-hmm.

ALJ: -- at the exam. And I think he said he had to help her or something about her getting on and off the table. And he said that the cane was medically necessary.

ATTY: Yes, sir.

ALJ: I did see that. Yeah.

ATTY: Okay. I just wanted to point that out that was –

ALJ: Okay.

ATTY: -- that was a time when it says that. And that she also has the positive straight leg raises on the test in that exam also in [Exhibits] 6F and 5F. And then the nerve encroachment shows on the [Exhibit] 11F MRIs.

ALJ: All right, I think -- okay, I'll look -- I'll review that once again to see if there any alteration in the hypothetical so we can adjust it -- should have been taken.

Tr. 67.   The ALJ, however, did not make any further change to the hypothetical or discuss in his opinion whether he considered doing so.

Although the Court acknowledges that an individual using a medically required hand-held assistive device can, in some circumstances, perform sedentary work, and courts, including this Court, have affirmed decisions even when the ALJ failed, as here, to include the use of an assistive device in the RFC,[8] the facts of this case make the Court's determination difficult if not impossible, and in such circumstances remand is required.[9]

---

[8] *See* SSR 96-9p, 57 Fed. Reg. 34482 (July 2, 1996); *Baker v. Comm'r Soc. Sec.*, 384 F. App'x 893, 895-96 (11th Cir. 2010) (holding substantial evidence supports the ALJ's determination that plaintiff has the RFC to perform the full range of sedentary work without determining whether a cane was "medically necessary" where ALJ found a cane was needed for ambulation but plaintiff was able to work effectively without its assistance, no physician of record opined that the cane limited his ability to comply with exertional requirements of sedentary work and the only restrictions placed on plaintiff by his physician were no repetitive motions and no heavy lifting); *Wise v. Comm'r of Soc. Sec.*, No: 2:15-cv-386-FtM-CM, 2016 WL 5349510, at *10-11 (M.D. Fla. Sept. 26, 2016) (affirming RFC with no limitation for use of assistive device where there was conflicting evidence of medical necessity in physician's opinion and evidence did not support that plaintiff's use of a cane would preclude him from performing a full range of sedentary work).

[9] *See, e.g., Anderson v. Colvin*, NO. 15-00217-B, 2016 WL 5723675, at *4-5 (S.D. Ala. 2016) (finding RFC is not supported by substantial evidence because it required plaintiff to simultaneously carry/lift ten pounds while using a handheld assistive device while standing

From the foregoing testimony and the evidence in the record, first, as discussed above, it is clear that the ALJ did not discuss at all the weight given to Dr. Cassell's opinion, in general or concerning the medical necessity of an assistive device. Nor did he include this limitation in his RFC or hypothetical to the VE. What is not at all clear to the Court, however, because the ALJ failed to address these issues in his opinion, is whether after the hearing the ALJ in fact again reviewed the evidence as he stated he would to consider whether he should alter the hypothetical to the VE. Accordingly, it is not clear whether the VE's testimony provides substantial evidence that Plaintiff can perform even the sedentary jobs identified by the VE if an assistive device is in fact medically necessary. Although under some circumstances such failure could be considered harmless error if it was clear from the record Plaintiff could perform sedentary jobs and the unskilled occupational base would not be significantly eroded, such circumstances do not exist under the record here. The VE's testimony, without clarification, does not support that Plaintiff can perform these jobs if she needs to use both hands on an assistive device to hold herself up and walk. Although the ALJ does not need to specifically address every factor considered or perform a function by function analysis of the effects of Plaintiff's assistive device

---

without addressing that the device consisted of two crutches which were required for ambulation. "In other words, there is a huge difference between relying on two crutches to ambulate versus utilizing a cane or other device. This is particularly true where the record establishes that Plaintiff cannot lift while using the two crutches to ambulate."); *Stepp v. Colvin*, No. 8:15-cv-1183-T-27AAS, 2016 WL 4150479, at *7 (ALJ erred by failing to refute medical opinion that a cane is medically necessary in light of conflicting evidence and to determine the impact on plaintiff's RFC).

on specific basic sedentary work skills, he must articulate his opinion with sufficient clarity and specificity for the Court to determine that the decision is rational and supported by substantial evidence. "The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (internal citation omitted). "Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (internal quotations and citation omitted). For each of the reasons discussed above, the Court finds that the RFC is not supported by substantial evidence and, under the holding of *Winschel*, remand is required. On remand, the ALJ shall specifically address Dr. Cassell's opinion that Plaintiff is required to use a cane to ambulate, the weight given to Dr. Cassell's opinion, and how the restriction of using a cane or walker would affect Plaintiff's ability to perform her past relevant work or other jobs in the national economy.

Finally, the undersigned finds that the Court need not address any further issues raised by Plaintiff because the Commissioner's analysis may change based on a reconsideration of the aforementioned issues.

## VI.    Conclusion

Upon review of the record, the undersigned concludes that because the ALJ failed to discuss the weight afforded to the consultative opinion of Plaintiff's consultative physician, Dr. Cassell, specifically with respect to Plaintiff's medical necessity for an assistive device, and further failed to discuss the effect, if any, on Plaintiff's RFC, the Court cannot conclude that the ALJ's decision is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g); for the Commissioner to:

> A.    specifically address Dr. Cassell's opinion that Plaintiff is required to use a cane to ambulate, and sufficiently explain the weight given to Dr. Cassell's opinion; and

> B.    reevaluate Plaintiff's RFC and specifically address through the testimony of a VE, if needed, how Plaintiff's need for the use of an assistive device to ambulate effects Plaintiff's ability to perform her past relevant work or other jobs in the national economy;

2.    The Clerk of Court is directed to enter judgment in favor Plaintiff, Kelly Parker, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 17th day of April, 2017.



CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record